BABBITT, (HARRIS v.) See Case No. 6,114.

## Case No. 694.

### BABBITT v. WALBRUN et al.

[1 Dill. 19;[1] 4 N. B. R. 121, (Quarto, 30;) 2 Chi. Leg. News, 285.]

Circuit Court, W. D. Missouri. 1870.

BANKRUPTCY—SALES OUT OF ORDINARY COURSE—PROOF OF FRAUD, &c.

1. Under the 35th section of the bankrupt act [of March 2, 1867; 14 Stat. 517] it was held erroneous to instruct the jury "that if a sale of property by the bankrupt was not in the ordinary and usual course of business, it was fraudulent." The instruction should have been, not that such a sale was absolutely fraudulent, but that the fact referred to was prima facie evidence that it was fraudulent.

[See Rison v. Knapp, Case No. 11.861; Ashby v. Steere, Id. 576; Martin v. Toof, Id. 9,-167; Toof v. Martin, 13 Wall. (80 U. S.) 40.]

2. A sale of property by the bankrupt out of the usual and ordinary course of business is presumptively fraudulent, but this presumption

[1] [Reported by Hon John F. Dillon, Circuit Judge, and here reprinted by permission.]

may be rebutted by evidence aliunde, to be produced by the vendee.

[See Collins v. Bell, Case No. 3,010; Ashby v. Steere, Id. 576; Main v. Glen, Id. 8,-973; Norton v. Billings, 4 Fed. 623.]

3. When it is sought to affect a second vendee with fraud, such fraud must be shown, and the mere fact, without more, that he knew that the sale by the bankrupt to the first vendee embraced all of the stock of the seller, will not make the purchase of the second vendee fraudulent in law.

4. Certain sections of the bankrupt act, relating to fraud, commented on by the circuit judge.

[See Babbitt v. Walbrun, Case No. 695, and note.]

[5. Cited in Andrews v. Graves, Case No. 376. to the point that, to annul a sale, the vendee must be shown to have had good reason to believe that the insolvent was to evade the bankruptcy act.]

[6. Cited in Re Bousfield & Poole Manuf'g Co., Case No. 1,704, to the point that the six-months provision does not apply to cases arising between the bankrupt and a bona fide creditor, but between the bankrupt and others; and in Hall v. Hayner, Case No. 5,933, to the point that bankruptcy proceedings must be begun within four months after the giving of a preference to avoid such preference as contrary to the bankruptcy act.]

[In error to the district court of the United States for the western district of Missouri.]

[At law. Action in trover by Babbitt, assignee in bankruptcy of Mendelson, against Walbrun & Co., to recover the value of property alleged to have been fraudulently sold by the bankrupt. The district court gave judgment for plaintiff. (Opinion nowhere reported, and not now accessible.) Defendant brings error. Reversed. A new trial was subsequently had, and judgment again given for plaintiff. (Opinion nowhere reported, and not accessible.) On writ of error, this was affirmed by the circuit court in Case No. 695, and by the supreme court in Walbrun v. Babbitt, 16 Wall. (83 U. S.) 577.]

This case is brought here by writ of error from the district court of the western district of Missouri. The plaintiff is the assignee in bankruptcy of one Mendelson, and brought this action in trover against the defendants, Walbrun & Co., to recover the value of a stock of goods which the bankrupt sold to one Summerfield, and the latter to the defendants.

Mendelson is shown by uncontradicted evidence to have been insolvent, and he sold the whole stock of goods to Summerfield (his brother-in-law) at one time, he having written to the latter to come to the place where the former was living, with a view to disposing of his goods to him. Mendelson had but little if any other property. Summerfield remained there a few days, and leaving the goods in possession of Mendelson, went to the defendants, living in another place, and with whom he was acquainted, informed them of his purchase of Mendelson, the price he gave, and offered to sell the goods to the defendants at five per cent. profit. One of

the defendants went with Summerfield to the place where the goods were, stopped at Mendelson's house, examined the goods, accepted Summerfield's offer, and paid him in cash (as defendants and Summerfield both testify), the purchase money for the goods, and removed them to the defendants' place of business.

There was evidence tending to show that the defendants, or one of the firm, knew that Summerfield had purchased the entire stock of Mendelson; but there was no direct evidence that the defendants or either of them, knew that Mendelson was in debt, or that he had any fraudulent purpose in disposing of the goods to Summerfield.

There was no evidence that either of the defendants made any inquiry on these subjects.

Both Mendelson and Summerfield testify that the latter paid the former in cash for the goods, but Mendelson never paid any of the money to his creditors, giving, as a reason, that he had lost it.

This is a mere outline of the case, but sufficient to enable the instructions, which were given to the jury, and which are assigned as error, to be understood.

Among other instructions to the jury, the court gave the following:

1. "If, upon considering the facts and circumstances of the case, you come to the conclusion that the sale was not in Mendelson's ordinary and usual course of business, then the sale was fraudulent. If the sale is found by you to have been fraudulent, the next inquiry will be, were the defendants, Walbrun & Co., so connected with the sale throughout, as to make them parties in it, or affect them with notice; that is, such knowledge or relation to it as to make them liable.

"The firm of Walbrun & Co. consists of three partners; what any one or more of the partners did, or knew, is the knowledge of the whole of the partners, and they are, so far as this case is concerned, alike responsible.

2. "Returning to the first view presented in regard to Mendelson's insolvency, and the reasonable cause to believe it which Summerfield must have had, in order to make the sale void, you are instructed that if either of the partners of Walbrun & Co. had reasonable cause to believe that, at the time of the sale to Summerfield, Mendelson was insolvent, or acting in contemplation of insolvency, and the sale therefore void, and they or either of them afterwards, with that knowledge, purchased or obtained possession of the stock of goods in controversy, and converted them to their own use, they are responsible for the value of the goods.

3. "Upon the second branch of your inquiry as to the prima facie fraudulent sale, because not made in the usual course of business, you are instructed that if Walbrun & Co., or either of the partners, knew that the sale was not made in the ordinary and usual

course of business, by Mendelson to Summerfield, they are all affected with knowledge of the legal fraud, and if they afterwards, in any manner obtained possession of the goods, and converted them to their own use, they are responsible for their value. The fact that the goods passed through the hands of Summerfield makes no difference in the liability of Walbrun & Co., provided they were affected with knowledge or notice of the fraud, under the instructions given."

The plaintiff recovered, and the defendants prosecute a writ of error.

Allen and Broadhead, for plaintiffs in error.
N. Meyers, for defendant in error.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. The question is whether the instructions to the jury, referred to in the statement of the case, are correct; and this involves a construction of the 35th section of the bankrupt act [of March 2, 1867; 14 Stat. 517, c. 176.]

The second branch of this section is in these words: "And if any person being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede, or delay, the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property or the value thereof, as assets of the bankrupt. And if such sale, assignment, transfer, or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud."

It is to be read, however, in connection with the first subdivision of the same section, and with section 23 and section 39 (latter part) of the same act, these being in pari materia.

The court instructed that "if the sale was not in Mendelson's ordinary and usual course of business, then it was fraudulent." The court should have said, not that it was fraudulent, but that such a fact was prima facie evidence that it was fraudulent.

The sale by Mendelson to Summerfield would be fraudulent if the following facts concurred:

1st. If Mendelson was insolvent, or contemplated insolvency or bankruptcy.

2d. If Summerfield, when he bought the goods, had reasonable cause to believe him to be insolvent, and to be acting in contemplation of insolvency, and that the sale was made by Mendelson with a view to prevent, etc., or to defeat, etc., or to evade, etc., the provisions of the bankrupt act.

Sales so made are void and in fraud of creditors and their rights under the bankrupt law.

And as against the immediate vendee and all actual participators, such a sale, if made out of the usual and ordinary course of business (as where an insolvent merchant, as in the case at bar, sells out all his stock and property), is prima facie evidence of fraud; that is, of the foregoing elements constituting a fraudulent sale. But it is only prima facie, and the presumption may be rebutted by evidence aliunde to be produced by the vendee.

Now the second instruction, viewed in the light of the above exposition of the meaning of the statute, is erroneous, in that it omits, in speaking of the facts which make Walbrun & Co.'s purchase fraudulent, some of the essential elements of fraud.

This court cannot agree with the learned judge of the district court in the views of the law expressed in the third instruction.

It directs the jury that if the defendants knew that the sale by Mendelson to Summerfield was not made in the ordinary and usual course of business, they (the defendants) are affected with the legal fraud, and that if they afterwards obtained the goods in any way, and converted them, they are responsible. The error is in holding that such a sale is necessarily fraudulent, instead of presumptively fraudulent.

Besides, when it is proposed to affect a second vendee, such vendee must be shown to have participated in the original fraudulent sale, or it must be shown that he knew, or at least had reasonable cause to know, the facts which made the first sale fraudulent. The mere fact, without more, that the second vendee knew that the first sale embraced all the stock of the seller, is not enough to make his purchase fraudulent in law.

The title of the second vendee can only be impeached when it is shown that he participated in the fraudulent sale, or if this is not shown, then by showing that his purchase was actually mala fide; that is, made with knowledge that the sale to the first vendee was fraudulent; and the mere fact that the second vendee knew that the sale to the first vendee was made out of the ordinary course of business, will not alone defeat the title of the second vendee. It is only a circumstance proper as evidence to go to the jury on the question of the bona fides of the purchase by the second vendee. The distinction is to be observed between fraud and the evidence which goes to establish fraud. It is proper to observe that the term "fraud," as used in the sentence of the 35th section un-

der consideration, relates to both classes of cases mentioned therein. The first class is confined to preferences, and the second to sales, etc., other than by way of preference. See Bean v. Brookmire, [Case No. 1,168.]

²[Sections 23 and 29 are reconcilable, by confining the latter to actual frauds as contradistinguished from constructive frauds.]

Since the views of his honor below are not fully coincident with those above, the judgment of the district court is reversed, and the case remanded for a new trial.

Judge TREAT concurs.

Reversed.

NOTE, [from original report.] At the April term, 1871, this cause came once more before the court, the plaintiff having again recovered: and the rulings in the court below being in accordance with the foregoing opinion, the judgment was affirmed, [Case 695, and the judgment of the circuit court thereafter affirmed by the supreme court in 16 Wall, (83 U. S.) 577.]